JUDGE KATHLEEN CARDONE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION



| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **BCO CONSULTING SERVICES, INC** a | § |
| California Corporation, **KISHAN BHAKTA,** | § |
| **BRANDON CLORES** and **GIANNI OLILANG** | § |
| | § |
| | § |
| | § |
| **Defendants.** | § |
| | § |

**EP22CV0004**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.  The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western

    District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.  Defendant BCO CONSULTING SERVICES, INC. ("BCO) is a Corporation organized and

    existing under the laws of California and can be served via registered agent Hitu Bhakta at

    1952 Roanoke Avenue Tustin, California 92870.

3.  Defendant KISHAN BHAKTA ("Bhakta") is a natural person, resident of California, Chief

    Executive Officer of BCO and can be served at 9328 Magnolia Avenue, Riverside, California

    92503.

4.  Defendant BRANDON CLORES ("Clores") is a natural person, resident of California, Chief

    Financial Officer of BCO and can be served at 2345 Sullivan, Irvine, California 92614.

5.  Defendant GIANNI OLILANG ("Olilang) is a natural person, resident of California,

1

Secretary of BCO and can be served at 12950 Bracknell Street, Cerritos, California 90703.

## JURISDICTION AND VENUE

6. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

7. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

9. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the*

*Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

23. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

24. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

25. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

## FACTUAL ALLEGATIONS

26. Plaintiff has been on the Do-Not-Call Registry since December 2007.

27. Defendants BCO and Clores have been sued multiple times for TCPA violations.

28. Since at least 2018 Defendants BCO, Clores, Bhakta, and Oliang have facilitated, marketed, and enabled the "Student Loan Forgiveness" activities and the collection of payments in advance of services rendered in violation of the Telemarketing Sales Rules (TSR). 16 C.F.R. § 310.4(a)(5)(i).

29. Clores, Bhakta, and Oliang have designed their business model to confuse consumers and trick consumers into believing the Defendants are affiliated with the United States government.

30. Defendants Clores, Bhatka and Oliang are officers of BCO.

31. The Plaintiff has received at least 30 calls over 45 days to his cell phone ending in 4374, and his cell phone ending in 4604, without his prior express consent and not related to an emergency purpose, selling "Student Loan Forgiveness" products and services of Defendant BCO.

32. Plaintiff did not want or need student loan forgiveness. However, in order to cease harassment from the anonymous robocallers, such as defendants, Plaintiff told the representative he needed student loan forgiveness for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

33. Defendants lead Plaintiff to believe these payments were being made to his student loan services and did not inform Plaintiff these payments were for the services of Defendant BCO, and not applied to his student loan balance.

6

34. Plaintiff received multiple calls from a variety of spoofed caller ID's that contained a prerecorded message and were initiated using an automated telephone dialing system. The calls were on behalf of Defendant BCO. The calls generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

35. On November 9, 2021, Plaintiff received a phone call with a prerecorded voice message advertising student loan forgiveness to his cell phone ending in 4374. Plaintiff pressed "one" and was connected to a representative who identified himself as "Justin Taylor" and solicited Plaintiff on behalf of the Defendants. The representative lied to Plaintiff and said he was an agent/employee of the Federal government. The representative then asked Plaintiff for his email address and used this information to access Plaintiff's student loan account at https://studentaid.gov. The representative did so without Plaintiff's knowledge, authority or consent.

36. The representative in paragraph 33 changed Plaintiff's password without Plaintiff's permission and used the changed password to illegally access Plaintiff's personal information.

37. The representative/agent/employee of the Defendants asked Plaintiff to pay $1,200 upfront in violation of the TSR. The representative mislead Plaintiff into believing the $1,200 Plaintiff was being asked to pay upfront would be applied to Plaintiff's student loan balance. It was only after Plaintiff received the contract in the mail that Plaintiff learned the payment would be paid to Defendants and not towards his student loan balance. C.F.R. § 310.3(a)(1)(i).

38. On November 9, 2021, the representative sent Plaintiff an email from email address justintaylor@bcoconsultingservices.com memorializing the phone call and conversation.

7

39. While inside Plaintiff's FASA account the Defendant's agent discovered Plaintiff's phone number registered with the Department of Education is the cell phone ending in 4604. Upon seeing this information, the Defendants' agent began calling Plaintiff on this 4604 phone number.

40. The Defendants representative began to bombard Plaintiff with phone calls from phone number 800-964-8647 which is the published phone number for Defendant BCO.

41. On December 9, 2021, Plaintiff received a phone call from spoofed phone number 915-205-7217 with a prerecorded voice message advertising student loan forgiveness. When Plaintiff pressed "one" he was again connected to "Justin Taylor" who solicited Plaintiff for "student loan forgiveness." Justin Taylor emailed Plaintiff a contract that memorialized and documented the phone call.

42. When Plaintiff searched his call records Plaintiff discovered at least 18 phone calls from 915-205-7217.

43. The Defendants representative made repeated calls to Plaintiff from phone number 916-713-5313 asking Plaintiff to sign the contract without providing Plaintiff with enough time to read the contract or research the company or the claims made by the Defendants' representative. The representative kept telling Plaintiff how "urgent" it was to sign the documents in an attempt to get Plaintiff to sign the documents without reading them.

44. Table A below displays calls made to plaintiff by defendants:

8

| Date | Time | Caller ID |
|------|------|-----------|
| 11/9/2021 | 4:37PM | 915-209-3534 |
| 11/9/2021 | 5:00PM | 916-713-5313 |
| 11/9/2021 | 5:11PM | 800-964-8647 |
| 11/10/2021 | 9:44AM | 800-964-8647 |
| 11/10/2021 | 9:48AM | 800-964-8647 |
| 11/11/2021 | 12:34PM | 800-964-8647 |
| 11/11/2021 | 12:35PM | 800-964-8647 |
| 11/16/2021 | 10:37AM | 916-713-5313 |
| 11/22/2021 | 10:07AM | 916-713-5313 |
| 11/24/2021 | 12:01PM | 916-713-5313 |
| 11/24/2021 | 2:25PM | 915-205-7217 |
| 11/24/2021 | 3:41PM | 915-205-7217 |
| 11/24/2021 | 3:51PM | 915-205-7217 |
| 11/24/2021 | 4:30PM | 915-205-7217 |
| 11/29/2021 | 10:37AM | 916-713-5313 |
| 11/30/2021 | 10:36AM | 916-713-5313 |
| 11/30/2021 | 2:54PM | 915-205-7217 |
| 12/2/2021 | 7:53AM | 915-205-7217 |
| 12/2/2021 | 11:17AM | 915-205-7217 |
| 12/2/2021 | 11:18AM | 915-205-7217 |
| 12/2/2021 | 11:23AM | 915-205-7217 |
| 12/3/2021 | 8:55AM | 915-205-7217 |
| 12/3/2021 | 2:57PM | 915-205-7217 |
| 12/3/2021 | 3:31PM | 915-205-7217 |
| 12/3/2021 | 3:32PM | 915-205-7217 |
| 12/6/2021 | 10:24AM | 916-713-5313 |
| 12/7/2021 | 10:07AM | 916-713-5313 |
| 12/7/2021 | 3:37PM | 915-205-7217 |
| 12/9/2021 | 9:53AM | 915-205-7217 |
| 12/9/2021 | 10:02AM | 915-205-7217 |

45. Defendants collectively knowingly and willfully mislead Plaintiff with respect to the

forgiveness of his student loans.

46. Defendants do not have a solicitation registration certificate on file with the Texas Secretary

of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas

resident.

47. Defendants initiated numerous unsolicited telephone calls, including robocalls with prerecorded voice messages, made unlawful telemarketing sales pitches regarding student loan forgiveness, misrepresented themselves as federal employees and/or agents, unlawfully collected payments upfront, unlawfully collected Plaintiff personal information, such as social security number, email address, address, credit card issuer, bank account number, bank account routing number, and home address.

48. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

49. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

50. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

51. No emergency necessitated the calls.

52. None of the defendants ever sent Mr. Callier any do-not-call policy. Plaintiff sent internal do-not-call policy requests to info@rejuvenatefinancial.com and info@synergystudent.com.

53. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls,

54. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

55. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

### COMMON ENTERPRISE

56. Defendants BCO, Clores, Bhatka, and Olilang have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged herein. Defendants have conducted the business practices herein through an interrelated network of companies that have common ownership or officers, business functions, employees, office locations, and that have commingled funds. Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein. Defendants Clores, Bhatka and Olilang have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendants BCO that constitute the common enterprise.

### DEFENDANTS CLORES, BHATKA AND OLILANG ARE PERSONALLY LIABLE

57. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

58. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954

11

F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

59.     Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

60.     The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

61.  At all times material to the Complaint, acting alone or in concert with others, Defendant Clores has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant BCO including the acts or practices set forth in this Complaint.

62.  At all times material to the Complaint, acting alone or in concert with others, Defendant Bhakta has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant BCO including the acts or practices set forth in this Complaint.

63.  At all times material to the Complaint, acting alone or in concert with others, Defendant Olilang has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant BCO including the acts or practices set forth in this Complaint.

64.  Defendants Clores, Bhatka, and Clores are the principal directors and operators of Defendant BCO and control the day-to-day operations of BCO and directed their employees,

13

agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit "student loan forgiveness" and "student loan consolidation" services.

65.  Defendants Clores, Bhatka, and Clores approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefit.

66.  Defendants collect their fees for the "student loan forgiveness" and "student loan consolidation" through a credit card payments and authorized checks processed prior to providing any services.  This is an unlawful payment processing scheme that collects payments in advance of services rendered in violation of the TSR.  16 C.F.R. § 310.2(cc) and 16 C.F.R. § 310.4(a)(5)(i).

67.  Defendants Clores, Bhakta, and Olilang knew the collection of fees before rendering service is illegal.

68.  Defendants Clores, Bhakta and Olilang knowingly and willfully ignore the law.  They solicit the services of student loan forgiveness and collect money upfront before any services are performed or any debts are forgiven.  The violations are the direct result of the instructions Defendants have given to their agents, employees, solicitors, salespersons, and others that carry out their schemes.

69.  Defendants Clores, Bhakta, and Olilang are not merely bystanders.  They are the masterminds that schemed, planned, directed, initiated and controlled the illegal and fraudulent behavior.

70.  Defendants Mr. Chung, Ms. Chung, and Dinh are well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendants are the sole directors of BCO and the only persons with the power to make the unlawful, fraudulent, and unethical

14

behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendants break the law with their eyes and pocketbooks wide open.

71. Defendants Clores, Bhakta, and Olilang have operated as a common enterprise while engaging in the deceptive acts and practices and violations of law and formulated, directed, controlled, had the authority to control, or participated in the acts and practices of BCO that constitutes a common enterprise.

72. Defendants Clores, Bhakta, Olilang should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

73. Defendants Clores, Bhakta, Olilang should be held liable because to do otherwise would simply allow the individuals to simply dissolve BCO and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

**74.** Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**75.** Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**76.** Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**77.** Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

**78.** The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## The Plaintiff's cell phone is a residential number

79. The calls were to the Plaintiff's cellular phone (915) 383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

80. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

81. The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## Violations of the Texas Business and Commerce Code § 302.101

82. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and

bond on file with the Texas Secretary of State.

83. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## I.    FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

1.    Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent.

3.    Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.    Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.    Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.    Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3] and,

c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.      Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## III. THIRD CLAIM FOR RELIEF:

## Violations of The Texas Business and Commerce Code 305.053

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. FOURTH CLAIM FOR RELIEF

## (Violations of The Texas Business and Commerce Code 302.101)

1.   Mr. Callier incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

2.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

19

3. Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

4. Mr. Callier Callier is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 30 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.      An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

20

I.      Such further relief as the Court deems necessary, just, and proper.

January 3, 2022                                Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604